UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-210-FDW

| GREGORY ADAMS-BEY, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) ORDER |
| FNU ROGERS, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Complaint, (Doc. No. 1), as well as his pending Motions for "reparative injunction," (Doc. No. 16), photocopies at the Court's expense, (Doc. No. 17), preliminary injunction and temporary restraining order, (Doc. No. 18), and default judgment, (Doc. No. 19). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 7).

**I.  BACKGROUND**

*Pro se* Plaintiff Gregory Adams-Bey[1] has filed a civil rights suit pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a), with regards to incidents that allegedly occurred at the Lanesboro Correctional Institution. He names the following as Defendants in their official and individual capacities: Superintendent Rogers, Officer Gibbs, Officer Adams, and Security Risk Group ("SRG") Intelligence Officer Hatley.

Construing the Complaint liberally and accepting it as true, Prison Emergency Response Team ("PERT") members Defendants Adams, Gibbs, and another individual searched Plaintiff's

---
[1] According to the North Carolina Department Public Safety's website, Plaintiff's name is Gregory A. Adams, Jr., offender number 0668860.

1

unit at around 8:00 AM on February 18, 2017. Defendant Gibbs placed Plaintiffs in hand restraints outside his cell while Defendant Adams and the unidentified officer searched the cell. During the search, Plaintiff noticed that papers were being "rambled through" and envelope seals were being broken. (Doc. No. 1 at 2). Plaintiff said he needed to see what was going on with his legal mail but he was told that he was not allowed to see what was going on and was told "You don't have any rights." (Doc. No. 1 at 2).

Defendant Adams walked out of Plaintiff's cell with an "excessive amount of papers" including a letter from the Colorado Secretary of State that Plaintiff signed for as legal mail on August 22, 2016; pleadings including an averment of jurisdiction, motion for entry of default, and motion for default judgment in envelopes addressed to New Hanover County Courthouse that were labeled as legal mail; pleadings including an averment of jurisdiction, motion for entry of default, motion for default judgment, in envelopes addressed to U.S. District Court for Eastern District of North Carolina labeled as legal mail; an affidavit of ownership; name change deed; affidavit of truth as a living man; ecclesiast deed addressed to Colorado Secretary of State labeled as legal mail; an eight-page supplemental grievance addressed to the N.C. State Bar; Petition for discretionary review to the N.C. Supreme Court labeled as legal mail; three civil summonses in a § 1983 case; three interrogatories; a motion to compel discovery; a motion to produce documents; and a copy of an amended complaint addressed to the Eastern District of North Carolina and labelled as legal mail. (Doc. No. 1 at 3-4).

On the top of the stack of papers was a flyer depicting Prophet Noble Drew-Ali. Plaintiff told Defendant Adams that the flyer pertains to the prophet's 131st birthday and feast on January 8. Adams said Plaintiff was not allowed to have any material that is SRG in nature, and that the material is going to special ops. Adams referred to the fact that Plaintiff has "-Bey" attached to his

name, which Plaintiff found offensive. (Doc. No. 1 at 4). Plaintiff reiterated to Defendant Adams how vital the legal material was and Adams laughed in Plaintiff's face while shuffling through it and said "Yeah, Moorish guy pray & get your 'shit' back…" (Doc. No. 1 at 4).

The PERT team officers never filled out a property documentation sheet pursuant to North Carolina Department of Public Safety's policy and procedure handbook. Plaintiff is now "in default on several matters due to unlawful seizure of legal property." (Doc. No. 1 at 6).

Plaintiff's Moorish American religious/legal materials, documents, instruments, pleadings, were sent to SRG officer Defendant Hatley for investigation, and Plaintiff was later charged with possessing SRG contraband. Plaintiff was charged with frivolous disciplinary charges which he appeals. (Doc. No. 1 at 5). Plaintiff appears to claim that Moorish Americans should not be classified as SRG. (Doc. No. 1 at 5) ("Upon information and belief, the alleged 'Security Risk Group' 'Sovereign Citizens' is differentiated from a Moorish-American with certain inalienable rights.").

Plaintiff used the Lanesboro C.I.'s prisoner grievance procedure on February 18, 2017, then filed a supplemental grievance, but there has been no response from the grievance committee. On February 20, 2017, Plaintiff wrote to Defendant Rogers "Special Ops" asking for redress because he is responsible for PERT Team officials. (Doc. No. 1 at 6). On February 22, 2017, Plaintiff wrote to SRG Officer Germeny asking for redress. Germeny said he would look into the matter but later said that officials should write a DC-160 when Plaintiff said he was afraid of officers disposing of his material. On that date, Plaintiff also wrote to the ACLU complaining about the issue and asking for assistance. On February 26, 2017, Plaintiff wrote to Defendants Rogers and Hatley complaining and asking for a redress. On March 7, 2017, Plaintiff wrote to Defendant Hatley asking for a DC-160, and wrote to Rogers asking for redress.

Defendant Rogers is deliberately indifferent by ignoring Plaintiff's complaints and impeding his access to courts by failing to train and adequately correct Defendants Adams and Gibbs' misconduct, for which he is responsible for as superintendent and advisor to the PERT Team. This violates Plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights and RLUIPA because these actions are religious discrimination as a Moorish American/participant in Moorish science temple of America/ Moorish divine movement. Defendant Rogers failed to admonish PERT Team members to perform acts such as opening and reading legal mail, for which there are procedures that have to be followed to prevent infringement on Plaintiff's rights. Plaintiff's Fourth Amendment rights were infringed because there was no warrant based on probable cause for PERT Officers Gibbs and Adams to seize Plaintiff's property. Plaintiff filed a motion to stay with the N.C. Supreme Court and legal notice regarding the materials that were seized and the court dismissed the motion on March 15, 2017.

Defendant Gibbs did not let Plaintiff see Defendant Adams open and read legal materials after Plaintiff said his legal mail was being tampered with. This shows knowing and intentional contribution to the infringement of his rights.

Adams opened several envelopes that were addressed to state and federal courts. There was no excuse for this. Every piece of mail had Plaintiff's "free national name –Bey" and it was "confiscated unjustly preventing several legal actions to be pursued causing frustration and impediment denying Petitioner's [access] to the courts causing default and injury to Petitioner's First & Fourth Amendment, violating Petitioner's due process while awaiting trial hindering Petitioner to file motions with the court pursuant to N.C.G.S. 15-A-952(d) along with challenging conviction causing petitioner emotional distress violating Petitioner's rights under the Eighth Amendment." (Doc. No. 1 at 8).

Defendant Hatley was deliberately indifferent to the meritorious value of Plaintiff's legal materials, denying him due process. Defendant Hatley told Plaintiff that being a Moor is being a sovereign citizen discriminating against Plaintiff's religion. Defendant Hatley created charges of SRG material, (Doc. No. 1 at 9), discriminated by saying his thumbprint was not authentication, and that using "–Bey" on summons made it relate to SRG material, which violated RLIUPA and First Amendment. Defendant Hatley violated due process by unlawfully condoning the seizure of his legal materials without adequate investigation, which also violated the Fourth Amendment.

Plaintiff seeks declaratory judgment; preliminary and permanent injunction; compensatory damages; punitive damages; dismissal of sentence in case number 12CRS58024, 12CRS9328; dismissal of pending charge 16CR060166; jury trial; costs; and any additional relief the court deems just, proper and equitable. (Doc. No. 1 at 10).

**II. STANDARD OF REVIEW**

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of

Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Unnamed Individuals**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

Plaintiff is granted leave to file an Amended Complaint within 14 days of this Order in which he may properly name any individuals in the caption of the Amended Complaint against whom he intends to proceed.[2]

**(2)** **Cell Search**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. Amend. IV. The applicability of the Fourth Amendment turns on whether "the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." Hudson v. Palmer, 468 U.S. 517, 525 (1984) (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)). While "imprisonment carries with it the circumscription or loss of many significant rights," the Supreme Court nevertheless cautioned that "prisons are not beyond the reach of the Constitution." Id. at 523–24. A prisoner thus retains "some legitimate expectation of privacy in his person" under the Fourth Amendment. See King v. Rubenstein, 825 F.3d 206, 214–15 (4th Cir. 2016). However, society does not "recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and ..., accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."

---

[2] The Court expresses no opinion about the timeliness, procedural viability, or merit of any such claim.

Hudson, 468 U.S. at 525.

Plaintiff alleges that Defendants removed him from his cell and conducted a search of the cell without probable cause or a warrant. Prisoners have no expectation of privacy in their prison cells so no Fourth Amendment violation occurred. Plaintiff's claim for the unlawful search of his cell is therefore dismissed.

**(3)** **Destruction/Confiscation of Property**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). The Parratt-Hudson doctrine is limited to cases involving "a random and unauthorized act by a state employee, . . . not a result of some established state procedure." Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982). When the challenge is to an "established state procedure," or when the deprivation is inflicted by a state official who is empowered to work deprivations and provide process where it is predictable when those deprivations might occur, the availability of a post-deprivation judicial hearing normally does not satisfy procedural due process. Id.; Zinermon v. Burch, 494 U.S. 113 (1990). The Parratt-Hudson doctrine does not apply when a municipal officer acts pursuant to a municipal policy or custom. Woodard v. Andrus, 419 F.3d 348 (5th Cir. 2005); Matthias v. Bingley, 906 F.2d 1047 (5th Cir. 1990).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27

N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff's claim that the Defendants confiscated and/or destroyed his property without writing up a property receipt pursuant to prison policy alleges a random and unauthorized act for which Plaintiff's redress lies in a North Carolina conversion action. Therefore, this claim is dismissed.

**(4)** **Access to Courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff alleges that Defendants confiscated or destroyed a number of legal mail including an "ecclesiast deed" addressed to the Colorado Secretary of State; a North Carolina Bar

9

Association grievance; a petition for discretionary review addressed to the North Carolina Supreme Court; civil summonses, interrogatories, a motion to compel discovery, a motion to produce documents, and a copy of an amended complaint addressed to the U.S. District Court for the Eastern District of North Carolina. (Doc. No. 1 at 3-4). Plaintiff alleges that he filed a "motion to stay" with the North Carolina Supreme Court and legal notices about the materials that were seized, but the court dismissed the motion. (Doc. No. 1 at 7). Confiscation of his legal mail "unjustly prevent[ed] several legal actions to be pursued causing frustration and impediment denying Petitioner's [access] to the courts causing default and injury to Petitioner's First and Fourth Amendment, violating Petitioner's due process while awaiting trial hindering Petitioner to file motions with the courts pursuant to N.C.G.S. 15-A-952(d) along with challenging conviction petitioner emotional distress violating Petitioner's rights under the Eighth Amendment." (Doc. No. 1 at 8). He claims that he is "in default on several matters due to unlawful seizure of legal property." (Doc. No. 1 at 6).

Plaintiff's vague and conclusory claim that Defendants' confiscation of legal mail to various courts and other entities fails to demonstrate that a nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. Therefore, Plaintiff's claim that Defendants violated his right to access the courts is dismissed as facially insufficient.

**(5) Prison Discipline**

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces

the possible loss of diminution credits or solitary confinement, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff, 418 U.S. at 564-71. There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy.

Plaintiff alleges that he received frivolous disciplinary charges in connection with the materials confiscated during the cell search "which [he] appeals." (Doc. No. 1 at 5).

This fails to set forth a facially sufficient claim with regards to the prison disciplinary proceedings. Plaintiff does not allege that Defendants failed to comply with the required

11

procedures or that there was no evidence to support the disciplinary findings. Therefore, this claim is dismissed.

**(6)     Religious Discrimination**

RLUIPA provides, in part that no government shall impose a "substantial burden" on the religious exercise of a person residing in or confined to an institution, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). A plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a *prima facie* showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v.

12

Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

The First Amendment of the Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." Buxton v. Kurtinitis, 862 F.3d 423, 432 (4th Cir. 2017) (citing Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

Plaintiff appears to allege that Defendants discriminated against him based on his religion by confiscating his religious material, classifying him as an SRG member, and insulting him.

First, his claim with regards to the SRG classification is insufficient to proceed because an inmate has no interest in any particular prison classification. See generally Sandin v. Conner, 515 U.S. 472 (1995) (a change in the conditions of a prisoner's confinement that does not exceed the scope of the original sentence only gives rise to a federally protected liberty interest if it imposes atypical and significant hardship in relation to the ordinary incidents of prison life).

Second, his claim that he was subjected to insulting language fails to state a constitutional violation. See Moody v. Grove, 885 F.2d 865, 865 (4th Cir. 1989) ("[v]erbal abuse alone does not violate a constitutional right.").

Third, his general claims of religious discrimination are too vague and conclusory to state a violation of either the First Amendment or RLUIPA. He fails to allege that he has a sincerely held religious belief that was substantially burdened by Defendants' actions or that he lacked any

alternative means of expressing his religious beliefs. Therefore, his general claim of religious discrimination is facially insufficient to state a claim under either the First Amendment or RLUIPA.

Therefore, Plaintiff's claims of religious discrimination are dismissed.

**(7)** **Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

To the extent that Plaintiff alleges that various individuals denied his grievances, these allegations fail to state a cognizable claim for § 1983 relief and the claim is dismissed.

**(8)** **Failure to Train/Supervise**

A supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

To the extent Plaintiff alleges that Defendant Rogers failed to adequately train, supervise, and discipline his subordinates' unconstitutional conduct, this claim fails because Plaintiff has not set forth a facially sufficient claim that his rights have been violated. Therefore, his claim of supervisory liability necessarily fails.

**(9)** **Criminal Cases**

Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus pursuant to 28 U.S.C. § 2254, and a complaint under the Civil Rights act, § 1983. Muhammad v. Close, 540 U.S. 749, 750 (2004). "Habeas corpus, and not § 1983, is

15

the exclusive federal remedy for state prisoners seeking actual release from confinement," <u>Griffin v. Baltimore Police Dep't</u>, 804 F.3d 692, 694–95 (4th Cir. 2015) (citing <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 487–90 (1973)), whereas "requests for relief turning on circumstances of confinement may be presented in a § 1983 action," <u>Muhammad</u>, 540 U.S. at 750. Some cases are "hybrids," where a prisoner seeks damages, which are unavailable through a habeas action, but on allegations that either imply the invalidity of an underlying conviction or of a particular ground for denying relief short of serving the maximum term of confinement. <u>Id.</u> To address this situation, the Supreme Court held in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), that:

> to recover damages for … harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus….

<u>Id.</u> at 485.

For <u>Heck</u> to bar a § 1983 claim, (1) "a judgment in favor of the plaintiff [must] necessarily imply the invalidity of [a plaintiff's] conviction or sentence," <u>Heck</u>, 512 U.S. at 487, and (2), the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practically sought habeas relief while in custody, <u>Covey v. Assessor of Ohio Cty.</u>, 777 F.3d 186, 197 (4th Cir. 2015).

Further, federal courts must refrain from staying or enjoining pending state prosecutions except under special circumstances. <u>Younger v. Harris</u>, 401 U.S. 37 (1971). The <u>Younger</u> abstention doctrine extends to state civil proceedings that are akin to criminal prosecutions, <u>Huffman v. Pursue Ltd.</u>, 420 U.S. 592 (1972), or that implicate a state's interest in enforcing the orders and judgments of its courts, <u>Pennzoil Co. v. Texaco Inc.</u>, 481 U.S. 1 (1987). Proceedings

fitting within the Younger doctrine include state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. New Orleans Public Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 367-68 (1989). A federal court may disregard Younger's mandate to abstain from interfering with ongoing state proceedings only where extraordinary circumstances exist that present the possibility of irreparable harm. Robinson v. Thomas, 855 F.3d 278, 285 (4th Cir. 2017) (internal quotations omitted).

Plaintiff asks the Court to set aside his sentences in criminal case numbers 12CRS58024, 12CRS9328, and dismiss his pending charges in case number 16CR060166. He has not alleged that his criminal convictions have been set aside in case numbers 12CRS58024 and 12CRS9328, and his request to set aside the sentences necessarily implies their invalidity, so this claim is barred by Heck. With regards to his pending criminal case, 16CR060166, Plaintiff has not cited any extraordinary circumstances that present the possibility of irreparable harm with regards to case number so the Court's interference in that case is barred by Younger.

Therefore, Plaintiff's claims attack his final and ongoing state criminal proceedings are dismissed.

### IV. PENDING MOTIONS

**(1) Injunction**

Plaintiff seeks "reparative injunction," (Doc. No. 16), to remove his SRG classification status due to "unpleasant encounters" with staff. He also seeks preliminary injunction and temporary restraining order, (Doc. No. 18), to stop the discrimination against him as a "Moorish American," which has caused his mail to be intercepted and hinders his chance for rehabilitation and lower custody levels, and is causing emotional distress. Irreparable harm is threatened because

he cannot litigate certain matters due to the seizure of his material and staff continuing to delay sending his outgoing mail.

A preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. Pashby v. Delia, 709 F.3d 307, 319 (4th Cir. 2013). It is an extraordinary remedy that is never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, a plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Id. at 20; Di Biase v. SPX Corp., 872 F.3d 224, 229 (4th Cir. 2017).

Plaintiff's claims for preliminary injunctive relief fail because he has not stated any facially sufficient claim for relief and thus cannot establish that he is likely to succeed on the merits. Therefore, his motion is denied.

**(2)** **Photocopies**

Plaintiff has sent a letter requesting copies of the Complaint and declarations/exhibits at the Court's expense, (Doc. No. 17).

There is no provision in the *in forma pauperis* statute for the payment of any litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant. See 28 U.S.C. § 1915. His request for photocopies of items in the record, which he filed, is denied.

**(3)** **<u>Default Judgment</u>**

In his "Declaration for Entry of Default," (Doc. No. 19), Plaintiff argues that default judgment should be entered on his motion for preliminary injunction and temporary restraining order because more than 14 days have elapsed since he filed his motion for preliminary injunctive relief and Defendants have failed to respond.

Defendants have not yet been served process and were not ordered to respond to Plaintiff's motion for preliminary injunction and temporary restraining order. No default occurred, and his motion for default judgment will be denied.

**V.  CONCLUSION**

For the reasons stated herein, the Complaint is deficient and subject to dismissal. Plaintiff shall have **fourteen (14) days** in which to file an Amended Complaint in which he may attempt to cure these deficiencies and state a facially sufficient claim for relief. Although Petitioner is appearing *pro se*, he is required to comply with all applicable timeliness and procedural requirements, including the Local Rules of the United States District Court for the Western District of North Carolina and the Federal Rules of Civil Procedure. <u>See</u>, <u>e.g.</u>, <u>Mayle v. Felix</u>, 545 U.S. 644, 664 (2005) (discussing relation back). The Amended Complaint must be on a § 1983 form, which the Court will provide, and it must refer to the instant case number so that it is docketed in the correct case. It must contain a "short and plain statement of the claim" showing that Plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The Amended Complaint must contain all claims Plaintiff intends to bring in this action, identify all defendants he intends to sue, and clearly set forth the factual allegations against each of them. Plaintiff may not amend his Complaint by merely adding defendants and claims in a piecemeal fashion. The Amended Complaint will supersede the original Complaint so that any claims or parties omitted from the Amended Complaint will be

waived. See Young v. City of Mt. Ranier, 238 F.3d 567 (4th Cir. 2001).

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint, (Doc. No. 1), is **DISMISSED** as facially insufficient pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. Plaintiff shall have fourteen (14) days in which to file an Amended Complaint in accordance with this order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint in accordance with this Order, this action will be dismissed and closed without prejudice and without further notice to Plaintiff.

3. The Clerk is directed to mail a copy of a new Section 1983 complaint form to Plaintiff.

4. Plaintiff's Motion for "reparative injunction," (Doc. No. 16), is **DENIED.**

5. Plaintiff's Motion for photocopies at the Court's expense, (Doc. No. 17), is **DENIED**.

6. Plaintiff's Motion for preliminary injunction and temporary restraining order, (Doc. No. 18), is **DENIED.**

7. Plaintiff's Motion for default judgment, (Doc. No. 19), is **DENIED.**

Signed: March 21, 2018

Frank D. Whitney
Chief United States District Judge