UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-210-FDW

| GREGORY ADAMS-BEY, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | **ORDER** |
| FNU ROGERS, et al., | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Amended Complaint, (Doc. No. 26). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 7).

## I. BACKGROUND

*Pro se* Plaintiff Gregory Adams-Bey[1] has filed a civil rights suit pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a), with regards to incidents that allegedly occurred at the Lanesboro Correctional Institution. The Complaint was dismissed on initial review because Plaintiff failed to state a claim upon which relief could be granted. The Court granted him the opportunity to file an Amended Complaint which is now before the Court for initial review.[2]

Plaintiff names the following as Defendants in their official and individual capacities: Superintendent John Herring, Correctional Officer and Security Risk Group ("SRG") Intelligence Officer Hatley, Prison Emergency Response Team ("PERT") Officer FNU Gibbs, and PERT

---

[1] According to the North Carolina Department Public Safety's website, Plaintiff's name is Gregory A. Adams, Jr., offender number 0668860.
[2] The Amended Complaint is largely duplicative of the Complaint. Any subclaims not specifically addressed in this Order remain insufficient for the reasons set forth in the original Order on initial review. (Doc. No. 21).

1

Officer FNU Adams.

Construing the Amended Complaint liberally and accepting it as true, PERT Officers Defendants Adams and Gibbs searched Plaintiff's unit between 7:00 and 11:30 AM on February 18, 2017. Defendants Adams, Gibbs, and an unidentified officer placed Plaintiff in handcuffs, and made him step out of the cell. Gibbs stood outside of Plaintiff's cell with him while Adams and the unidentified officer searched through Plaintiff's legal property. Plaintiff saw Adams breaking seals on legal envelopes and reading "VERY VITAL LEGAL PETITIONS" and told Gibbs that he had "vital LEGAL MATERIAL" that was being tampered with. (Doc. No. 26 at 3). Gibbs instructed Plaintiff to step away from the door because he was not allowed to see what was going on.

Adams left the cell with legal petitions and a flyer for the birthday feast of "profit Noble Drew-Ali…." (Doc. No. 26 at 4). Plaintiff asked Adams to return the legal material but Adams laughed and said "YEAH, MOORISH GUY, PRAY AND GET YOUR SHIT BACK!" (Doc. No. 26 at 4). The legal material seized from Plaintiff consisted of:

> An Averment of Jurisdiction in appearance De Bene Esse 'Special Appearance' Petitions to state and federal courts challenging conviction & pending charge; proof of Denationalization Motions Amended Complaint 5:16CTS 0202 Interrogatories, Petition for Discretionary Review to the North Carolina Supreme Court, Supplemental Grievance on ADA Connie Jordan of New Hanover County to the North Carolina State Bar, letter/instruments to and fro the Colorado Secretary of State, etc.

(Doc. No. 26 at 4).

Plaintiff claims that all of the foregoing pertained to civil rights and liberty issues which he was hindered in pursuing. Plaintiff stressed the validity of his legal materials and that there were deadlines that would lead to default.

Plaintiff received a sanction charging him with contraband SRG material. He was charged

with a disciplinary offense for gang or Security Threat Group ("STG") activities. Defendant Hatley made untrue allegations and sanctioned Plaintiff, stating that Plaintiff used "SOVEREIGN CITIZEN TACTICS BY ISSUING FALSE SUMMONS AGAINST STATE AND GOVERNMENT OFFICIALS." (Doc. No. 26 at 5). Hatley classified him as SRG without a disciplinary hearing. Plaintiff was never found guilty by a Disciplinary Hearing Officer.

He further alleges that "Plaintiffs facts in averment along with proof of the International Crime of DENATIONALIZATION etc; with civil claims have been hindered in being proved to obtain redress in litispendence." (Doc. No. 26 at 5).

Plaintiff seeks declaratory judgment; preliminary and permanent injunction; compensatory damages; punitive damages; dismissal of sentence in case number 12CRS58024, 12CRS9328; dismissal of pending charge 16CR060166; a jury trial; costs; and any additional relief the court deems just, proper and equitable. (Doc. No. 26 at 9).

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him

to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Unnamed Individuals**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel

4

or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

**(2)** **Destruction/Confiscation of Property**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). The Parratt-Hudson doctrine is limited to cases involving "a random and unauthorized act by a state employee, . . . not a result of some established state procedure." Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982). When the challenge is to an "established state procedure," or when the deprivation is inflicted by a state official who is empowered to work deprivations and provide process where it is predictable when those deprivations might occur, the availability of a post-deprivation judicial hearing normally does not satisfy procedural due process. Id.; Zinermon v. Burch, 494 U.S. 113 (1990). The Parratt-Hudson doctrine does not apply when a municipal officer acts pursuant to a municipal policy or custom. Woodard v. Andrus, 419 F.3d 348 (5th Cir. 2005); Matthias v. Bingley, 906 F.2d 1047 (5th Cir. 1990).

Under North Carolina law, an action for conversion will lie against a public official who

wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff's claim that the Defendants confiscated and/or destroyed his property during the cell search alleges a random and unauthorized act for which Plaintiff's redress lies in a North Carolina conversion action. Therefore, this claim is dismissed.

**(3) Access to Courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff alleges that Defendants confiscated or destroyed a number of items of "legal mail" that could have led to default in several civil rights matters. Plaintiff's vague and conclusory claim

6

that Defendants' confiscation of legal mail to various courts and other entities fails to demonstrate that a nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. Therefore, Plaintiff's claim that Defendants violated his right to access the courts is dismissed as facially insufficient.

### (4) STG Classification

Plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472 (1995). "[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges … are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*).

Plaintiff claims that Defendant Hatley changed him to STG classification without due process. Plaintiff's allegations are insufficient to proceed because he has no federally protected interest in any particular housing or security classification; he has failed to allege how his STG classification has presented an atypical and significant hardship in relation to the ordinary incidents of prison life. Therefore, Plaintiff's claims regarding his STG classification are dismissed.

### (5) Religious Discrimination

RLUIPA provides, in part that no government shall impose a "substantial burden" on the religious exercise of a person residing in or confined to an institution, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the

burden on that person "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). A plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S.Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a *prima facie* showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' ... Rather, due deference will be afforded to those

8

explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

The First Amendment of the Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." Buxton v. Kurtinitis, 862 F.3d 423, 432 (4th Cir. 2017) (citing Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives

exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89-90. Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace, 472 F.3d at 199 n.8.

Plaintiff alleges that Defendants discriminated against him for being a "Moorish-American" by seizing legal petitions which frustrated and impeded his legal claims. (Doc. No. 26 at 7).

Plaintiff's general claims of religious discrimination are too vague and conclusory to state a violation of either the First Amendment or RLUIPA. He fails to allege that he has a sincerely held religious belief that was substantially burdened by Defendants' actions. Further, his claim restates his allegations regarding deprivation of access to the courts which is insufficient for the reasons stated in Section (3), *supra*. Therefore, his claims of religious discrimination are facially insufficient to state a claim under either the First Amendment or RLUIPA and will be dismissed.

**(6)** **Criminal Cases**

Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus pursuant to 28 U.S.C. § 2254, and a complaint under the Civil Rights act, § 1983. Muhammad v. Close, 540 U.S. 749, 750 (2004). "Habeas corpus, and not § 1983, is the exclusive federal remedy for state prisoners seeking actual release from confinement," Griffin v. Baltimore Police Dep't, 804 F.3d 692, 694–95 (4th Cir. 2015) (citing Preiser v. Rodriguez, 411 U.S. 475, 487–90 (1973)), whereas "requests for relief turning on circumstances of confinement may be presented in a § 1983 action," Muhammad, 540 U.S. at 750. Some cases are "hybrids," where a prisoner seeks damages, which are unavailable through a habeas action, but on allegations that either imply the invalidity of an underlying conviction or of a particular ground for denying

relief short of serving the maximum term of confinement. Id. To address this situation, the Supreme Court held in Heck v. Humphrey, 512 U.S. 477 (1994), that:

> to recover damages for … harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus….

Id. at 485.

For Heck to bar a § 1983 claim, (1) "a judgment in favor of the plaintiff [must] necessarily imply the invalidity of [a plaintiff's] conviction or sentence," Heck, 512 U.S. at 487, and (2), the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody, Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015).

Further, federal courts must refrain from staying or enjoining pending state prosecutions except under special circumstances. Younger v. Harris, 401 U.S. 37 (1971). The Younger abstention doctrine extends to state civil proceedings that are akin to criminal prosecutions, Huffman v. Pursue Ltd., 420 U.S. 592 (1972), or that implicate a state's interest in enforcing the orders and judgments of its courts, Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987). Proceedings fitting within the Younger doctrine include state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. New Orleans Public Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 367-68 (1989). A federal court may disregard Younger's mandate to abstain from interfering with ongoing state proceedings only where extraordinary circumstances exist that present the possibility of irreparable harm. Robinson v. Thomas, 855 F.3d

278, 285 (4th Cir. 2017) (internal quotations omitted).

Plaintiff asks the Court to set aside his sentences in criminal case numbers 12CRS58024, 12CRS9328, and dismiss his pending charges in case number 16CR060166. He has not alleged that his criminal convictions have been set aside in case numbers 12CRS58024 and 12CRS9328, and his request to set aside the sentences necessarily implies their invalidity, so this claim is barred by Heck. With regards to his pending criminal case, 16CR060166, Plaintiff has not cited any extraordinary circumstances that present the possibility of irreparable harm with regards to case number so the Court's interference in that case is barred by Younger.

Therefore, Plaintiff's claims attack his final and ongoing state criminal proceedings are dismissed without prejudice as frivolous.

### IV. CONCLUSION

For the reasons stated herein, the Complaint is dismissed without prejudice as frivolous and for failure to state a claim upon which relief can be granted pursuant to § 1915(e)(2)(B)(i) and (ii).

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint is **DISMISSED** without prejudice as frivolous and for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

2. The Clerk is instructed to close this case.

Signed: May 17, 2018

Frank D. Whitney
Chief United States District Judge